Joseph JASPAN, Michael Carbone, Jack Dee, John Probeyhan, Robert Sasso, Alfred Finkel, Theodore King, Chester Broman, and John Quadrozzi, as Trustees of the Local 282 Pension Trust Fund, Plaintiffs,

v.

CERTIFIED INDUSTRIES, INC., IIJ Enterprises, Inc., IIJ Associates and Split Rock Realty, Inc., Defendants.

No. CV 84–2561.

United States District Court, E.D. New York.

Aug. 27, 1986.

trolling regulations promulgated by the Pension Benefit Guarantee Corporation ("PBGC") "exempt the transaction at issue from withdrawal liability as a matter of law"; (2) grant leave to amend defendants' answer by incorporating the said regulations as a defense; and (3) staying the action to afford Certified the opportunity to apply to PBGC "for a variance which would relieve Certified of the obligation to pay withdrawal liability."

On February 19, 1986 the parties entered into a stipulation of facts bearing on the unresolved issue, i.e., whether Enterprises, IIJ and Split Rock were, at the time of the sale of Certified's assets at the time of the sale (June 30, 1981), under "common control" of the business with Certified and should therefore be treated "as a single employer." 29 U.S.C. § 1301(b)(1). Thereupon plaintiffs moved for summary judgment against the remaining defendants jointly and severally together with Certified.

Cohen, Weiss & Simon, New York City (Eugene S. Friedman and Jay P. Levy-Warren, of counsel), for plaintiffs.

Gelberg & Abrams, New York City (Michael D. Hess and David B. Stern, of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

We granted partial summary judgment in favor of the Local 282 Pension Fund ("Fund") and against defendant Certified Industries, Inc. in the amount of $1,166,865 with interest at 11% from May 4, 1983 and directed a trial on the claim against defendants IIJ Enterprises, Inc. ("Enterprises"), IIJ Associates ("IIJ") and Split Rock Realty, Inc. ("Split Rock"). See Memorandum of Decision dated October 25, 1985, 645 F.Supp. 998.

By notice dated January 29, 1986, defendants moved to (1) vacate the order of October 23, 1985 on the ground that con-

## DISCUSSION

### Defendants' Motions

PBGC denied Certified's application for a waiver of the requirements of section 4204(a)(1)(B) and (C) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1384(a)(1)(B) and (C). (Letter dated May 30, 1986 PBGC to Michael D. Hess, Esq.) Defendants' motions are in all respects denied.

### Plaintiffs' Motion for Judgment

The stipulation of facts and the undisputed facts establish the following: Certified Industries, Inc. was incorporated in December 1972. From 1972 until June 30, 1981 it was engaged in the business of manufacturing concrete and owned interests in real estate. On June 30, 1981 Certified sold the concrete manufacturing business, together with the plant and real estate (Newtown Creek Property) at which the business was operated, for the sum of eight million ($8,000,000) dollars to Marine Pollution Service, Inc. (Contract dated November 25,

1980). The interest of the shareholders were:

| | |
|---|---|
| Walter C. Goldstein | 37 ½% |
| Bernard Jereski | 12 ½% |
| Frank Phelan | 10% |
| Anthony C. Bertone | 5% |
| De Paola Donor Trusts | 35% |
| | 100% |

After the sale of the concrete manufacturing business to Marine, Certified changed its corporate name to IIJ Enterprises, Inc. and remained in the business as the owner of real estate interests.

On February 14, 1983 the Fund served notice on Certified of Certified's withdrawal liability in the amount of $1,167,555. On August 23, 1983, Certified's counsel wrote the Fund challenging the assessment. The Fund through counsel responded by reasserting its right to the sum claimed and advising Certified that it was in default in payments due under the statute. On September 7, 1983, the shareholders of IIJ Enterprises, Inc. formed a partnership in which each partner had the same interest as he held as a shareholder in IIJ Enterprises, Inc. On September 30, 1983, IIJ Enterprises, Inc. transferred all its assets to IIJ Associates. IIJ Enterprises, Inc. elected to dissolve in 1983; a Certificate of Dissolution was executed on March 20, 1985. As of January 1, 1985, some of IIJ Associates' assets were sold to third parties. All the remaining assets (except the New Rochelle Shopping Mall) were transferred to Brookhaven Property Associates, a partnership consisting of the same parties holding the same interest they held in IIJ Associates.

Split Rock Realty Company, Inc. was incorporated in November 1981 as a real estate management corporation. The shareholders are Joseph DePaola (37½%), Walter C. Goldstein (37½%), Frank Phelan (12½%) and Bernard Jereski (12½%). Split Rock manages most of the properties it owns as well as properties it transferred to Brookhaven Property Associates. Split Rock did not receive any of the assets of IIJ Enterprises, Inc.

### Under Common Control

■ Neither the partnership IIJ Associates nor the corporation Split Rock Realty Company, Inc. were in existence at the time of the sale of Certified's concrete manufacturing business to Marine. The definition of a "single employer" under 29 U.S.C. § 1301(b)(1) as refined pursuant to Treas. Reg. § 11.414(c)–2 imposing liability upon all members of a group exercising "common control" must be read in light of the purpose for imposing such liability. It is to fix liability upon those who were responsible at the time of withdrawal for continued funding. *In Re Challenge Stamping and Porcelain Co.*, 719 F.2d 146, 151 (6th Cir.1983).[1] The cases cited by plaintiffs are cases where liability was imposed on entities in existence at the time withdrawal liability was fixed. The cases are inapposite.

### Transferee Liability

■ The assets conveyed by Enterprise to IIJ Associates consisted of New York real estate. The transactions are governed by New York law.

Shareholders who receive the assets of a corporation have a duty to provide for the payment of the obligations of the corporation and the failure to do so imposes an obligation to pay the corporate debts to the extent of the value of the assets received. *Farm Stores, Inc. v. School Feeding Corp.*, 102 A.D.2d 249, 477 N.Y.S.2d 374, 377 (2d Dep't 1984), *modified on other grounds and affirmed*, 64 N.Y.2d 1065,

---

1. The phrase in § 1301(b)(1) refers to "employees ... [who] are under common control." The complete thought is stated as follows:

    [A]ll employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.

    Treas.Reg. § 11.414(c)–2 classifies groups (parent-subsidiary, brother-sister, combined group) that may, according to the relationship with each other or the degree and nature of stock ownership, be found to have a group exercising common control of employees. *See Pension Benefit Guarantee Corp. v. Ouimet Corp.*, 630 F.2d 4, 10–11 (1st Cir.1980), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1356, 67 L.Ed.2d 339 (1981).

489 N.Y.S.2d 877, 479 N.E.2d 222 (1985).[2] The directors of a corporation hold the assets of the corporation for the benefit of creditors and they have a duty to afford creditors an opportunity to present and enforce their claims before transferring the corporate assets. *Clarkson Co. Ltd. v. Shaheen,* 660 F.2d 506, 512 (2d Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982); *Matter of Baldwin Trading Corp.,* 8 N.Y.2d 144, 202 N.Y.S.2d 312, 168 N.E.2d 383 (1960); *Bartle v. Finklestein,* 19 A.D.2d 256, 241 N.Y.S.2d 655 (4th Dep't 1963).[3]

Plaintiffs are entitled to judgment in the amount of $1,166,865 together with interest at 11% per annum from May 4, 1983 against IIJ Associates. The claim against Split Rock Realty, Inc. is dismissed.

### ORDER

The Clerk is directed to enter judgment in favor of Joseph Jaspan, et al. as Trustees of the Local 282 Pension Trust Fund and against defendants Certified Industries, Inc., IIJ Enterprises, Inc. and IIJ Associates in the amount of $1,166,865 together with interest at 11% per annum from May 4, 1983 together with attorney's fees and costs to be determined by the court, and in favor of the defendant Split Rock Realty, Inc. dismissing the complaint as to Split Rock Realty, Inc., and it is further

ORDERED that IIJ Associates and Brookhaven Property Associates, the individuals comprising the partnerships, their servants, agents and employees are hereby restrained and enjoined from selling, assigning and/or pledging the assets of said partnerships, while the judgment entered herein or any part thereof is unpaid, except that they may make payments of obligations due in the regular course of business, and it is further

ORDERED that plaintiff's attorney serve and file affidavits or affirmations on defendants' attorney in support of its application for attorney's fees and costs pursuant to § 1132(g)(2) detailing the nature of the services, the hours spent and the hourly rate requested. Defendants' attorney shall serve and file affidavits or affirmations in opposition within twenty (20) days specifying objection, if any, to the reasonable value of the services, hourly rate, whether the service rendered was reasonably necessary, etc.

**2.** The court found a statutory basis in §§ 271, subd. 1 and 273 Debtor and Creditor Law. § 271, subd. 1 provides "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." § 273 provides: "Every conveyance made and every obligation incurred by a person who is or will

be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

**3.** It appears that Goldstein and DePaola were officers and/or directors of Certified.