JOHN RANSOM *vs.* JOHN C. BIDWELL ET ALS.

First Judicial District, Hartford, January Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A "debt is due," within the meaning of those words in § 880 of the General Statutes relating to garnishee process, where there is an existing obligation to pay either in the present or future.

An existing obligation upon the part of the owner of a completed building to pay such sum of money to the contractor as arbitrators may thereafter award, is subject to garnishment at once as a debt that "is due," although not payable until the arbitrators have fixed the amount.

As a general rule priority of service in process of foreign attachment gives priority of lien, as in cases of other attachments.

Argued January 7th—decided February 23d, 1915.

ACTION of interpleader to determine the rights of the respective defendants in and to a sum of money in the hands of the plaintiff, brought to and tried by the Superior Court in Hartford County, *Bennett, J.;* facts found and judgment rendered in favor of the claimants J. H. and W. E. Cone and the Hampden Lumber Company, from which the Edwin Taylor Lumber Company appealed. *No error.*

September 7th, 1911, the plaintiff, Ransom, entered into a written contract with J. B. Suprenant and C. M. Hebert for the construction of an apartment house. Article 12 of the contract provided as follows: "In case the owner and contractor fail to agree in relation to matters of payment, allowance or loss referred to in Articles 3 or 8 of this contract, or should either of them dissent from the decision of the architect referred to in Article 7 of this contract, which dissent shall have been filed in writing with the architect within ten days of the announcement of such decision, then the matter shall be referred to a board of arbi-

tration to consist of one person selected by the owner, and one person selected by the contractor, these two to select a third. The decision of any two of this board shall be final and binding on both parties hereto. Each party hereto shall pay one-half of the expense of such reference."

May 10th, 1912, when the house was substantially completed, the contractors abandoned the work and did no more work thereon. About this time the owner took possession of the premises. A dispute then arose between the plaintiff and the contractors as to whether there was a balance due the latter, and if so, the amount of it. November 25th, 1912, the architect issued his final certificate awarding a balance to the contractors. This decision of the architect was controverted, and, in accordance with the terms of the contract above quoted, the matter was submitted to arbitration. April 13th, 1913, the arbitrators made an award finding an indebtedness from the plaintiff to the contractors of $1,511.31.

The premises were subject to several valid mechanic's liens which have been paid, and there remains the sum of $648.72 due from John Ransom to J. B. Suprenant and C. M. Hebert in accordance with the terms of the award.

J. H. and W. E. Cone have a claim of $45.93, claimed to be secured by an attachment made May 10th, 1912; the Hampden Lumber Company has a claim of $612.44, said to be secured by an attachment made June 14th, 1912; and the Edward Taylor Lumber Company has a claim which it contends is secured by an attachment made June 27th, 1913. The amount of these claims is in excess of the balance remaining in the hands of the garnishee.

July 1st, 1913, Ransom, the owner, brought to the Superior Court in Hartford county an action in the nature of an interpleader, setting out the facts, and

asked that the defendants be required to interplead together, and that, upon payment of the sums to such persons as the court might order, he be discharged. An order was passed in compliance with this application. The issues arising upon the order to interplead were afterward tried by the Superior Court, and a judgment rendered in favor of J. H. and W. E. Cone and the Hampden Lumber Company.

*Henry J. Marks*, for the appellant (claimant Edwin Taylor Lumber Company).

*Alvan Waldo Hyde*, for the appellee (claimant Hampden Lumber Company).

*Terry J. Chapin*, for the appellee (claimant J. H. and W. E. Cone).

RORABACK, J.    Upon the trial the Taylor Lumber Company claimed that the attachments made by J. H. and W. E. Cone and Hampden Lumber Company were premature, in that nothing was due from the plaintiff which would be subject to process of foreign attachment at the time their attachments were made.    The Superior Court overruled this claim and rendered judgment for the other two defendants.    This ruling is substantially the only question presented by the reasons of appeal of the Taylor Lumber Company.

General Statutes, § 880, provides that where a debt is due from any person to the defendant, in any civil action, the plaintiff may insert in his writ a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint, at least twelve days before the session of the court to which it is returnable, with such debtor of the defendant, and that from the time of leaving such copy any debt due from

such garnishee to the defendant shall be secured in
the hands of such garnishee to pay such judgment as
the plaintiff may recover.

The meaning of the word "due," as used in this
statute, is one of the controlling questions in the
present case.  This word is defined in the Bouvier
Law Dictionary (Rawle's 3d Revision, p. 946) as "what
ought to be paid; what may be demanded."  It is
also stated by Bouvier that the word "due" differs
from "owing," in that a thing that is owing may not be
due.

In Words & Phrases (Vol. 3, p. 2213) it is stated: "The
word 'due,' according to the consensus of judicial opin-
ion, has a double meaning: (1) That the debt or ob-
ligation to which it applied has by contract or opera-
tion of law become immediately payable; (2) a simple
indebtedness, without reference to the time of pay-
ment, in which it is synonymous with 'owing,' and in-
cludes all debts, whether payable *in præsenti* or *in
futuro*."

Section 936 of the General Statutes provides: "When
it shall appear on the hearing of any *scire facias*, founded
on a foreign attachment, that the debt due to the
principal is not yet payable, the court shall direct the
execution to be stayed until the time the debt would
have become payable."

Our statutes relating to foreign attachment were
designed to carry out more effectually the policy of our
law that all the property of a debtor not exempt from
execution shall be made subject to the payment of his
debts, and that every facility consistent with the rea-
sonable immunity of the debtor should be afforded to
subject such property to legal process.

"Attachment by factorizing process, as it is now
generally called, has long since ceased to be merely a
remedy for the prevention of fraudulent conveyances,

or of fraud by absconding debtors. The statute should be liberally construed, and parts of its language more especially adapted to its earlier purposes may properly be regarded as inapplicable to some of its present objects." *Sutherland* v. *Brown,* 85 Conn. 67, 74, 81 Atl. 1033.

It is apparent that the words "debt due," as used in § 880 of the General Statutes, imply an existing obligation to pay either in the present or future. This doctrine has been expressed in many of the decisions by this court, nor has this rule been confined to cases where the amount of the claim garnisheed was liquidated.

In *Knox* v. *Protection Ins. Co.,* 9 Conn. 430, 433, it is said: "Our statute declares, 'that whenever the goods or effects of an absent or absconding debtor are concealed in the hands of his attorney, agent, factor or trustee, so that they cannot be found or come at, to be attached; or where debts are due from any person to an absent or absconding debtor; it shall be lawful,' &c. It would be an extremely narrow construction of these words to limit them to *liquidated* debts. The object of the statute is, to secure for the benefit of the creditor, *all* the property of the debtor—all his goods, effects and credits. The defendants owe the absent debtor for a loss; they do not adjust it; but say they will not be responsible for it to his creditors. They are liable to pay him money; and they will pay only when the damages are liquidated. It can be recovered in the same form of action, viz. *assumpsit.* Had the damages been ascertained, there could have been no difficulty; but in that case, there would have been only *indebtedness.* Had the absent debtor sent them goods to sell, or debts to collect, and had they converted them into money, still the account might have remained unsettled, and they have been liable in an action of *assumpsit* or

account." See, also, *New Haven Saw-Mill Co.* v. *Fowler,* 28 Conn. 103, 108; *Woodruff* v. *Bacon,* 35 Conn. 97, 105; *Goodman* v. *Meriden Britannia Co.,* 50 Conn. 139; *Seymour* v. *Over-River School District,* 53 Conn. 502, 512, 3 Atl. 552.

The finding shows that on May 10th, 1912, the contract now before us had been substantially performed, and that no further services were rendered by the contractors after that date. It also appears that on or before this time the owner of the premises took possession of the building.

The debt now in question may be treated as then due, within the meaning of that word as used in the statute. The procedure pointed out in the contract for fixing the amount of the claim did not take away any of the essential rights of the contractors to recover.

After the services had been rendered and the owner had taken possession of the building, a clear and substantial cause of action arose, and there was an existing obligation to pay the amount which might be found to be due by the proceeding set forth in the contract. This obligation was certain as to the liability to pay, and uncertain only as to the amount for which the owner of the building might be ultimately found to be obligated. This claim was like any other claim of indebtedness where the amount of the claim was capable of being controverted. This question was one which could be fairly investigated and determined in an action of *scire facias* based upon the foreign attachment already made.

As a general rule, priority of service of a process of foreign attachment gives priority of a lien as in the case of any other attachment. There is no good reason why this principle should not be held to apply in the present case. J. H. and W. E. Cone and the Hampden

Lumber Company made service prior to the Edwin Taylor Lumber Company, and therefore secured priority of lien.

There is no error.

In this opinion the other judges concurred.